## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE, INSURANCE COMPANY | |
| v. | CIVIL ACTION NO.: 2:12-CV-03052-AB |
| JIMMIE SANDERS, M.D., J.D., and BACK ON TRAC, P.C. | |

## ORDER

AND NOW, this _____ day of _____, 2014, upon consideration of Defendants' Motion to Compel, and any response thereto, it is hereby ORDERED and DECREED that Defendant's Motion is GRANTED. It is hereby ORDERED THAT:

1. Plaintiff shall be bound by the Confidentiality Agreement entered into between Defendants and the National Insurance Crime Bureau with respect to documents produced by the National Insurance Crime Bureau in response to Defendants' subpoena in this matter;

2. Plaintiff shall immediately produce in un-redacted form copies of all bills and invoices submitted by and/or paid to law firms in connection with any investigation by Plaintiff of Defendants;

3. Plaintiff's counsel is sanctioned in the amount of $10,000.00 for refusing to sign the Confidentiality Agreement concerning the NICB documents.

BY THE COURT:

_____
HON. ANITA BRODY

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE, INSURANCE COMPANY | CIVIL ACTION |
| v. | NO.: 2:12-CV-03052-AB |
| JIMMIE SANDERS, M.D., J.D., | |
| and | |
| BACK ON TRAC, P.C. | |

## DEFENDANTS 'MOTION TO COMPEL & FOR SANCTIONS

1. State Farm the instant lawsuit on May 31, 2012.

2. State Farm alleges wrongdoing against Defendants in hundreds of claims dating back to January 1, 2007.

3. The statutes of limitations which apply to Plaintiff's various claims are obviously critical issues to the defense of the case.

4. On November 19, 2013, Defendants served State Farm with Requests for Production of Documents (Set III). Plaintiff responded with objections to every single request. A copy of State Farm's Objections, which include the Requests, is attached as Exhibit "A".

### THE NICB DOCUMENTS – STATE FARM'S COUNSEL REFUSES TO SIGN A CONFIDENTIALITY AGREEMENT *HE DEMANDED*

5. Request Number 1 sought "any and all referrals, forms, memos, letters, e-mails, correspondence, claim files, and/or any other documents sent to and/or received from the National Insurance Crime Bureau by Plaintiff which in any way refers to or concerns Dr. Jimmie Sanders and/or Back on Trac, PC."

6. State Farm objected to this Request on multiple grounds, including that it was vague, unclear and ambiguous; that the documents sought are not relevant nor reasonably

calculated to lead to the discovery of admissible evidence; and that the documents sought are confidential, proprietary business information and/or trade secret protected.

7. Subject to these objections, State farm stated that it had access to responsive documents but would not produce the documents unless "an appropriate Confidentiality Order" was entered.

8. The National Insurance Crime Bureau ("NICB") is a not-for-profit organization that acts as a liaison between insurers and law enforcement.

9. The NICB is also actively involved in insurance legislation.

10. The NICB screens suspicious claims referred by insurers to determine whether they warrant submission to law enforcement.

11. State Farm is a member of the NICB and is one of the NICB's largest financial contributors.

12. State Farm's training manual directs its special investigators to refer claims to the NICB when there is sufficient evidence in a claim to reasonably suspect fraud.

13. On January 2, 2014, Defendants served a subpoena directly upon the National Insurance Crime Bureau seeking any and all correspondence, communications, Alerts, Bulletins, memos, e-mails, electronically stored information, reports, reviews, summaries, billing data, and/or any other documentation (electronically stored or in paper form), which reference Dr. Jimmie Sanders, Back on Trac, P.C., and/or Tax Identification Number 03-0401973.

14. On January 7, 2014, Richard Castagna, Esquire, counsel for State Farm, e-mailed the NICB about the subpoena, and indicted therein that "State Farm received permission to disclose the documents by the NICB as long as opposing counsel agreed to a

confidentiality agreement". A copy of Mr. Castagna's 1/7/14 e-mail is attached as Exhibit "B".

15. On January 15, 2014, the NICB e-mailed to Mr. Castagna all of the documents which the NICB believed to be responsive to Defendants' subpoena. <u>See</u> the e-mail sent on behalf of NICB's Associate General Counsel to Mr. Castagna, attached as Exhibit "C".

16. On January 17, 2014, Mr. Castagna and the NICB's Associate General Counsel discussed the fact that the NICB would be producing to Defendants documents which were responsive to Defendants' subpoena.

17. On January 21, at 8:11 A.M., Mr. Castagna wrote to the NICB's counsel asking for the NICB's position with respect to the confidentiality of the documents being produced.

18. At 11:13 A.M., the NICB's counsel responded: "As we discussed on [January 17] we produced the responsive documents to which State Farm had access. *If you could get a confidentiality order for these documents we would be appreciative.* See the e-mail exchange of Mr. Castagna dated January 21, 2014, attached as Exhibit "D".

19. At 11:21 A.M., Mr. Castagna wrote to defense counsel asking for a confidentiality order relating to the documents produced by the NICB and that "State Farm was told we could only disclose to non-members with a confidentiality order in place". <u>See</u> Mr. Castagna's e-mail of January 21, 2014 at 11:21 A.M., attached as Exhibit "E".

20. At approximately 3 P.M. on January 21, 2014, defense counsel received via Fed Ex the documents produced by the NICB in response to the subpoena. As the Court can easily see, the NICB's counsel made no reference to confidentiality or proprietary or trade secret issues with respect to the documents. A copy of the cover letter of the NICB's counsel is attached as Exhibit "F".

21. On January 22, 2014, undersigned counsel wrote to the NICB requesting confirmation that the documents which had been produced were the entire universe of documents which are responsive to Defendants' subpoena. A copy of counsel's letter is attached as Exhibit "G".

22. In response to this letter, local counsel for the NICB and counsel for the defendants exchanged a series of e-mails which culminated in the production of a second set of documents by the NICB, accompanied by a privilege log of redactions throughout the documents.

23. Rather than ague about the merit of the redactions, counsel for the NICB and undersigned counsel agreed to enter into a stipulation for a qualified protective order preserving the confidentiality of the documents so that they could be produced without redactions. NICB's counsel requested that State Farm's counsel be a signatory to the stipulation as well.

24. On February 21, 2014, undersigned counsel forwarded to counsel for the NICB and Mr. Castagna the stipulation. Attached as Exhibit "H" is the e-mail exchange leading up to the stipulation being circulated for signatures, as well as the Stipulation itself.

25. Thereafter, on March 4, 10, 11 and 20th, undersigned counsel requested that Mr. Castagna sign the confidentiality stipulation.

26. On March 20, 2014, Mr. Castagna wrote to undersigned counsel that <u>State Farm refuses to sign the stipulation</u>. A copy of Mr. Castagna's letter is attached as Exhibit "I".

27. It is imperative that Defendants obtain the NICB documents without redactions because they refer to the defendants as having come onto the radar of a redacted insurance company in 2007 for the exact practices alleged by State Farm in 2012. If the redacted

company is State Farm, this will obviously demonstrate that State Farm's claims are barred by the statute of limitations. If it is some other company, Defendants are entitled to discover what information that company looked at and whether said information was equally available to State Farm.

28. It is equally imperative that State Farm's counsel be sanctioned for its conduct.

29. It is hard to fathom a set of facts more worthy of sanctions than the conduct of State Farm and its counsel with respect to the documents sought by Defendants from the NICB

30. First, and most obviously, State Farm and its counsel improperly withheld the documents from discovery and thereafter acted deliberately to deceive Defendants about the NICB's position concerning the confidentiality of the documents.

31. Second, State Farm manufactured an imbroglio over "confidentiality", forced Defendants to incur the expense and waste of wading through all of State Farm's deception to finally get to an agreement with the NICB on confidentiality, and then State Farm and its counsel force the filing of this Motion simply to have the Court order *what State Farm demanded from the beginning.*

32. "It is well-established that the scope and conduct of discovery are within the sound discretion of the trial court." Guinan v. A.I. duPont Hosp. for Children, No. 08-228, 2008 U.S. Dist. LEXIS 27798, 2008 WL 938874, at *1 (E.D. Pa. Apr. 7, 2008) (*quoting* Marroquin-Manriquez v. INS, 699 F.2d 129, 134 (3d Cir. 1983)).

33. Courts have the inherent authority to ensure that parties abide by the Federal Rules of Civil Procedure, protect the integrity of the judicial system, and prevent abuse of the judicial process. Mid-Atlantic Constructors Inc. v. Stone & Webster Constr., Inc., 231 F.R.D. 465, 467 (E.D. Pa. 2005) (*quoting* Spencer, 1999 U.S. Dist. LEXIS 23387, 1999

WL 33957391, at *4).

34. Through the ability to sanction, courts may "impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d 27(1991)).

35. "Sanctions must, of course, be proportionate to the violation." Mid-Atlantic Constructors, 231 F.R.D. at 467.

36. In determining which sanctions are appropriate, courts consider the resulting prejudice, the need for deterrence, and the furtherance of policy objectives. Id.

37. Many sanctions (e.g. admonishment and compelling a party to file an affidavit) are liberally ordered by the court. Where a party's conduct goes beyond a "mere violation" of a discovery obligation, courts can impose additional, more severe sanctions. For instance, courts may impose attorney's fees as a sanction if the party acted "in bad faith, vexatiously, wantonly or for oppressive reasons." Coleman-Hill v. Governor Mifflin Sch. Dist., 271 F.R.D. 549, 552-553 (E.D. Pa. 2010).

38. State Farm has clearly acted vexatiously, wantonly, and for oppressive reasons in concealing the ICB documents from discovery.

### THE BILLS/INVOICES OF GOLDBERG, MILLER & RUBIN

39. Defendants' request number 2 was for "copies of any and all invoices and/or bills of the law firm of Goldberg, Miller & Rubin ("GMR") which were paid by Plaintiff and which form any part of your claimed damages in this case."

40. State Farm regularly uses the lawyers of GMR to act as investigators into medical providers.

41. The investigations conducted by GMR lawyers generally include assigning the defense of

matters in which a State Farm insured is being sued by a plaintiff who has received treatment from a targeted medical provider.

42. GMR uses these third party lawsuits to use the subpoena power to compel information about the medical providers with an eye towards ultimately convincing State Farm that a lawsuit could be filed against the provider alleging all manner of wrongdoing.

43. The culmination of these investigations is an "opinion letter" provided by GMR wherein GMR invariably advises State Farm to sue the medical provider GMR has investigated.

44. State Farm has admitted in this case that GMR provided just such an opinion letter concerning Dr. Sanders and his practice, and further, that it was this opinion letter which "first" put State Farm on notice of the fraud alleged in this case.

45. The hundreds of claim files in which State Farm alleges fraud to have occurred in this case, dating back to January 1, 2007, are rife with dozens (if not more) instances of GMR lawyers being intimately involved in the handling of the claims.

46. Defendants are seeking the bills/invoices of GMR which are in any way related to Dr. Sanders or Back on Trac in order to discover when GMR began investigating the defendants as well as all other non-privileged information which might demonstrate that GMR and State Farm were on notice of and actively investigating the fraud they allege in this case long before May of 2010.

47. Defendants will be materially prejudiced in their defense if the requested documents are not produced.

For all of the foregoing reasons, it is respectfully requested that the attached Order be entered.

RESPECTFULLY SUBMITTED,

By: _____(APB2)_____
ANDREW P. BARATTA, ESQUIRE
BARATTA, RUSSELL & BARATTA
The Loft at Woodmont
3500 Reading Way
Huntingdon Valley, PA   19006
(215) 914-2222
*Attorney for Defendants*

Date: ____4/8/14_____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE, INSURANCE COMPANY | : <br> : <br> : CIVIL ACTION |
| v. | : <br> : NO.: 2:12-CV-03052-AB |
| JIMMIE SANDERS, M.D., J.D., | : <br> : |
| and | : <br> : |
| BACK ON TRAC, P.C. | : |

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL

Defendants, by and through their counsel, Baratta, Russell & Baratta, hereby incorporate by reference the accompanying Motion to Compel.

RESPECTFULLY SUBMITTED,

By: _____(APB2)_____
ANDREW P. BARATTA, ESQUIRE
BARATTA, RUSSELL & BARATTA
The Loft at Woodmont
3500 Reading Way
Huntingdon Valley, PA  19006
(215) 914-2222
*Attorney for Defendants*

Date: ___4/8/14___

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE, INSURANCE COMPANY<br><br>v.<br><br>JIMMIE SANDERS, M.D., J.D.,<br><br>and<br><br>BACK ON TRAC, P.C. | CIVIL ACTION<br><br>NO.: 2:12-CV-03052-AB |

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing, Defendants' Motion to Compel was served upon counsel and party listed below via the Court's Electronic Filing system.

Cy Goldberg, Esquire
Goldberg, Moore & Miller, PC
121 South Broad Street, Suite 1500
.Philadelphia, PA 19107

APB2
ANDREW P. BARATTA, ESQUIRE
3500 Reading Way
Huntingdon Valley, PA 19006
(215) 914-2222
Attorney for DefendanTS

Date: 4//8/14